# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| CARDELL DOYLE, | ) | CASE NO. 1:21-CV-01838-PAB |
| Petitioner, | ) | |
| | ) | U.S. DISTRICT JUDGE |
| v. | ) | PAMELA A. BARKER |
| | ) | |
| | ) | U.S. MAGISTRATE JUDGE |
| WARDEN TIM MCCONAHAY, | ) | JENNIFER DOWDELL ARMSTRONG |
| Respondent, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.        INTRODUCTION

Petitioner, Cardell Doyle ("Mr. Doyle"), seeks a Writ of Habeas Corpus under 28 U.S.C. U.S.C. § 2254. (ECF No. 1.) Mr. Doyle, an Ohio inmate, is currently serving a seven-year sentence at the Southern Ohio Correctional Facility for aggravated robbery, grand theft, kidnapping, and improperly handling firearms in a motor vehicle. He asserts four grounds for relief. Respondent Warden Tim McConahay[1] ("Respondent") filed a Return of Writ. (ECF No. 5.) Mr. Doyle filed a Traverse. (ECF No. 9.) This matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation of Mr. Doyle's petition and other case-dispositive motions. For the reasons set forth below, I RECOMMEND the Court DISMISS and/or DENY Mr. Doyle's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 and not grant him a certificate of Appealability.

---

[1] Tim McConahay was previously the Warden of Southern Ohio Correctional Facility, where Mr. Doyle was incarcerated. Cynthia Davis, however, is now Warden of that facility. *See* https://drc.ohio.gov/about/facilities/southern-ohio-correctional-facility/southern-ohio-correctional (last visited Apr. 2, 2024). Thus, Warden Cynthia Davis should be substituted as the proper respondent in this case. *See* 28 U.S.C. § 2243 ("The writ . . . shall be directed to the person having custody of the person detained."); Fed. R. Civ. P. 25(d) (providing that, "when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending[,]" "[t]he officer's successor is automatically substituted as a party.").

## II.     RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Eighth District summarized the facts as follows:

{¶3}  The charges stemmed from a carjacking. Doyle and his codefendant robbed the victim at gunpoint during daylight hours, and the entire episode was recorded on a private surveillance camera. Doyle approached the victim with a handgun, which was later found by police in the glove compartment of the vehicle used in the commission of the crime, and demanded that the victim exit her car and give him the keys. Doyle and his codefendant, each driving one of the vehicles, fled the scene. The victim immediately provided the emergency dispatcher with a general description of the offenders, including their respective hairstyles and a general description of their vehicle. The stolen car was rented and had an anti-theft device installed. The rental company was able to track and disable the vehicle, allowing officers to locate the suspects within 30 minutes of the theft.

{¶4}  When officers arrived to secure the stolen vehicle, Doyle and the codefendant, both of whom fit the victim's generic description, were seen exiting their vehicle, which was parked near the stolen one. Doyle exited from the front passenger seat. Doyle claims that the officers first saw him in the driveway where their vehicle was parked. Evidently, the testifying officer's notes did not contain any information about where Doyle was located when the officers arrived. The fact that Doyle was seen exiting the codefendant's vehicle, however, was otherwise recorded in the official report generated by another officer. The firearm used during the robbery was found in the glove compartment of the codefendant's vehicle, and forensic evidence placed Doyle in the front passenger seating area. As officers approached the suspects, Doyle fled into a nearby structure. Officers verified that Doyle did not exit the building, and then they obtained a search warrant to enter it. Doyle was found in a wall, hiding behind the insulation.

{¶5}  Doyle's identity was the primary issue at trial. The victim's pretrial identification was less than certain and was predominantly based on the generic description provided to the emergency dispatcher. During her trial testimony, the victim was certain Doyle was the person who robbed her at gunpoint. She based her in-court identification on his facial features (his hairstyle had been changed

from the day of the crime). The trial court, sitting as the trier of fact, did not rely on the victim's in-court identification. Instead, the trial court considered several other facts that demonstrated identity: (1) Doyle's flight and attempt to evade arrest; (2) Doyle and his codefendant's proximity to the stolen vehicle and that they matched the victim's generic description; (3) the fact that Doyle left forensic evidence in the front, passenger area of the codefendant's vehicle, where the victim saw him sitting before the robbery, and from which officers saw Doyle exit upon arriving at the scene; and (4) the fact that the weapon used in the robbery was found in the glove compartment of that same vehicle in a location consistent with Doyle's seating location.

*State v. Doyle*, 2019-Ohio-979, 133 N.E.3d 890, ¶¶3-5.

## III.     PROCEDURAL HISTORY

### A.  <u>State Court Conviction</u>

On May 31, 2017, Mr. Doyle was indicted in the Cuyahoga County Court of Common Pleas on the following offenses: (1) aggravated robbery in violation of R.C. § 2911.01(A)(1) with a firearm specification; (2) grand theft in violation of R.C. § 2905.01(A)(1) with a firearm specification; (3) kidnapping in violation of R.C. § 2905.01(A)(2) with a firearm specification; and (4) improperly handling firearms in a motor vehicle in violation of R.C. § 2923.16(B). (ECF No. 5-1, Exhibit 1.) Mr. Doyle pleaded not guilty on all charges. (ECF No. 5-1, Exhibit 2.)

The trial granted the state's oral motion to continue the trial due to a delay in receiving DNA results. (ECF No. 5-1, Exhibit 3.) On November 29, 2017, the state again moved to continue Mr. Doyle's trial because the comparison report for Mr. Doyle's buccal swab would not be available until after the scheduled trial date. (ECF No. 5-1, Exhibit 4.) The trial court granted this motion. (ECF No. 5-1, Exhibit 5.) Mr. Doyle's trial was continued three more times—once on motion by the state due to the victim being unavailable, and twice upon the trial court's own motion because the trial court was in trial on a different matter. (ECF No. 5-1, Exhibits 6-8.)

On February 22, 2018, Mr. Doyle's case proceeded to a bench trial. (ECF No. 5-1, Exhibit 9.) The trial court found Mr. Doyle guilty on all counts and the firearm specifications. (*Id.*) On

March 1, 2018, the trial court held a sentencing hearing where it merged Mr. Doyle's counts of aggravated robbery, grand theft, and kidnapping as allied offense of similar import and the state elected to proceed on the count of aggravated robbery. (ECF No. 5-1, Exhibit 10.) The one-year firearm specification for Mr. Doyle's counts of aggravated robbery, grand theft, and kidnapping were merged with the three-year firearm specification for the count of aggravated robbery, and the three-year firearm specification on kidnapping was merged with the three-year firearm specification on aggravated robbery. (*Id.*)

The trial court then sentenced Mr. Doyle to a total sentence of 10 years. (*Id.*) This term included four years in prison for the count of aggravated robbery with an additional three years for the firearm specification; three years for the firearm specification on the count of grand theft, which was ordered to be served consecutively to the count of aggravated robbery; and 18 months for the count of improperly handling firearms in a motor vehicle to be served concurrently. (*Id.*)

### B. Direct Appeal

On March 30, 2018, Mr. Doyle, represented by counsel, filed a notice of appeal to the Eighth District Court of Appeals. (ECF No. 5-1, Exhibit 11.) In his merits brief, Mr. Doyle raised the following assignments of error:

(1) Appellant was denied a fair trial where an in-court identification was impermissibly suggestive.

(2) Appellant's convictions were not supported by sufficient evidence and the trial court erred by denying his motion for acquittal.

(3) The convictions were against the manifest weight of the evidence.

(4) The trial court erred by considering evidence that was not properly authenticated.

(5) Appellant's federal and state constitutional rights to a speedy trial and due process were violated and his conviction should be vacated and dismissed.

4

(ECF No. 5-1, Exhibit 12.) The state filed a reply brief. (ECF No. 5-1, Exhibit 13.)

The Eighth District Court of Appeals *sua sponte* ordered the parties to file supplemental briefs regarding whether the rial court, after merging Mr. Doyle's grand theft count with his aggravated robbery count, had the authority to independently impose the three-year sentence for the firearm specification for the count of grand theft. (ECF No. 5-1, Exhibits 14-16.)

On March 21, 2019, the Eighth District Court of Appeals overruled all five of Mr. Doyle's assignments of error, but reversed and vacated the three-year sentence on the firearm specification attached to Mr. Doyle's grand theft count and affirmed the judgment of the trial court. (ECF No. 5-1, Exhibit 17); *Doyle*, 2019-Ohio-979. The trial court also remanded the case back to the trial court for the limited purpose of correcting the sentencing error to reflect Mr. Doyle's sentence to be four years imposed on his count of aggravated robbery and three years on the firearm specification attached to that count, to be served consecutively and prior to the base four-year sentence for aggravated robbery. (*Id.*)

### C.  <u>Ohio Supreme Court</u>

Two years later, on June 3, 2021, Mr. Doyle, *pro se*, filed an untimely notice of appeal with the Ohio Supreme Court. (ECF No. 5-1, Exhibit 19.) In this motion, Mr. Doyle asserted that he had difficulties obtaining a copy of the Eighth District Court of Appeals decision to file his appeal in the Ohio Supreme Court and alleged that the COVID-19 pandemic produced other obstacles. (*See id.* at PageID#205-06.) The Ohio Supreme Court denied Mr. Doyle's motion and dismissed his appeal on August 3, 2021. (ECF No. 5-1, Exhibit 20.)

### D.  <u>Sentencing Remand</u>

On May 30, 2019, the trial court issued a *nunc pro tunc* judgment entry of sentence addressing the Eighth District Court of Appeals' remand instructions. This judgment entry vacated

Mr. Doyle's three-year sentence on the firearm specification attached to his grand theft count and imposed four years in prison on his aggravated robbery count and three years in the prison for the firearm specification on the aggravated robbery count which was ordered to be served prior to and consecutively to the sentence on the base charge of aggravated robbery. (ECF No. 5-1, Exhibit 21.) Mr. Doyle did not seek appellate review of this decision.

### E.  Delayed 26(B) Application

On April 23, 2021, Mr. Doyle, *pro se*, filed a motion for leave to file an application to reopen his direct appeal pursuant to App. R. 26(B), pointing to his confusion, lack of contact with his appellate counsel, and the COVID-19 pandemic in support of this request. (ECF No. 5-1, Exhibit 22.) On April 26, 2021, the Eighth District Court of Appeals denied Mr. Doyle's motion. (ECF No. 5-1, Exhibit 23.)

### F.  Federal Habeas Corpus

On September 27, 2021, Mr. Doyle, *pro se*, filed his 28 U.S.C. § 2254 habeas petition. (ECF No. 1.) Mr. Doyle's habeas petition raises the following grounds for relief:

**GROUND ONE:** Insufficient evidence to gain conviction.

> Supporting Facts: (1) Did not commit; (2) Inconsi[s]tenc[y] with evidence

**GROUND TWO:** Defendant was denied the right to use [the] Ohio appeal process creating a Due Process.

> Supporting Facts: 4 judges from [the] Ohio Supreme [Court] dissent

**GROUND THREE:** Mr. Doyle[']s U.S. Constitution Right to speedy trial was violated.

> Supporting Facts: The entire time fighting case in jail.

**GROUND FOUR:** Mr. Doyle[']s U.S. Constitution Rights were violated when in-cou[r]t identification was allowed.
> Supporting Facts: Court Appeals decision.

6

(ECF No. 1.)

## IV.    STANDARDS OF REVIEW AND GOVERNING LAW

### A.  <u>Jurisdiction</u>

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Cuyahoga County Court of Common Pleas sentenced Mr. Doyle, and the Court takes judicial notice that Cuyahoga County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Doyle's § 2254 petition.

### B.  <u>Exhaustion and Procedural Default</u>

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly

futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every state of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

Procedural default, however, can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim—supported by new reliable evidence not presented at trial—would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C.  Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground

that he is in custody in violation of the Constitution or laws or treaties of the United States." A

petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze*

*v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates*

*v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are

usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007)

(citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S.

62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court

determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not

review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th

Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must

defer to a state court's interpretation of its own rules of evidence and procedure" in considering a

habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim

be presented to the state courts under the same theory in which it is later presented in federal court."

*Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D.  **AEDPA Standard of Review**

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act,

Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless the adjudication of the claim
> –

>> (1) resulted in a decision that was contrary to, or involved an unreasonable
>> application of, clearly established Federal law, as determined by the
>> Supreme Court of the United States; or

>> (2) resulted in a decision that was based on an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding.

*Id.*

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision

only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

11

## V.     ANALYSIS

### A.  <u>Statute of Limitations</u>

Respondent argues that Mr. Doyle's federal habeas petition is 15 months late and must be dismissed as time-barred by the AEDPA statute of limitations. (ECF No. 5, PageID#33-39.) Respondent further asserts that statutory tolling cannot render Mr. Doyle's petition timely, and Mr. Doyle cannot establish that equitable tolling is applicable here. (*Id.*) For the reasons set forth below, Respondent's arguments are well-taken.

Under AEDPA, cases become final for purposes of § 2244(d)(1)(A) when the time to file a direct appeal has expired, including the time to file a petition for a writ of certiorari to the United States Supreme Court. *See Lawrence v. Florida*, 549 U.S. 327, 333 (2007); *Jenkins v. Burgess*, No. 22-1451, 2022 WL 16985646, at *1 (6th Cir. Oct. 14, 2022). Here, two triggering events for the finality of conviction potentially apply under §2244(d)(1)(A).[2] Mr. Doyle's petition is tardy under both triggering events.

The first potential triggering event deals with Mr. Doyle's original conviction. under 28 U.S.C. §2244(d)(1)(A), Mr. Doyle's judgment entry of conviction became final upon the expiration of the time for seeking direct review of his conviction and sentence. *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 459-60 (6th Cir. 2012) (citation omitted). Here, the Eighth District Court of Appeals affirmed Mr. Doyle's conviction on March 21, 2019. (*See* ECF No. 5-1, Exhibit 17.) Under Ohio Supreme Court Practice Rule 7.01(A)(1)(a)(i), Mr. Doyle had 45 days from the date of that decision—or until May 5, 2019—to file an appeal to the Ohio Supreme Court.

---

[2] AEDPA lists alternative dates on which the statute might begin to run in certain cases, but Mr. Doyle does not argue—and the record does not show—that any of the alternate dates on which the statute of limitations might run applies to his conviction. *Winslow v. Brunsman*, No. 1:07-cv-898, 2009 WL 140045, at *2 (S.D. Ohio Jan. 14, 2009) (finding that the finality of the state court judgment governs the date the statute of limitations began running and noting that the habeas petitioner failed to argue that any alternate date applied).

Because Mr. Doyle did not file a notice of appeal by that date, the one-year AEDPA statute of limitations began running the next day on May 6, 2019. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (holding that conviction becomes final for purposes of § 2244(d)(1)(A) when deadline to appeal to state supreme court expires). While Mr. Doyle thus had until May 6, 2020, to file his habeas petition, he did not do so until September 27, 2021, nearly 15 months later. (ECF No. 1.) Accordingly, Mr. Doyle's habeas petition is untimely unless some form of tolling applies.

The second potential triggering event deals with Mr. Doyle's limited *nunc pro tunc* resentencing order. As stated above, Mr. Doyle's conviction became final upon the expiration of the time for seeking direct review of his conviction and sentence under 28 U.S.C. § 2244(d)(1)(A). *Keeling*, 673 F.3d at 459-60 (citing *Gonzalez*, 565 U.S. 134). Under Rule 4 of the Ohio Rules of Appellate Procedure, Mr. Doyle had 30 days from the date of the resentencing order to seek further appellate review. Here, the resentencing order was issued on May 30, 2019. Mr. Doyle, however, failed to seek further appellate review. Thus, his conviction became final on June 29, 2019, the expiration date of the 30-day time period for seeking direct review in the Ohio Court of Appeals under App. R. 4. As a result, his AEDPA one-year statute of limitation period started the following day on June 30, 2019, and it expired uninterrupted one year later on June 30, 2020. Accordingly, even if the *nunc pro tunc* resentencing order serves as the triggering event, Mr. Doyle's federal habeas petition is 14 months too late unless some form of tolling applies.

### 1. *Statutory Tolling*

Mr. Doyle does not establish that statutory tolling applies to his case. Section 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

Accordingly, "[t]he one-year period of limitations is tolled" while a properly filed application state post-conviction or other collateral review is pending. *Keeling*, 673 F.3d at 459 (quoting 28 U.S.C. § 2244(d)(2)). Collateral review refers to "judicial review that occurs in a proceeding outside of the direct review process." *Wall v. Kholi*, 562 U.S. 545, 560 (2011).

Here, Mr. Doyle's AEDPA one-year statute of limitations began running at the very latest on June 30, 2019, the day following the expiration of his time to appeal the *nunc pro tunc* resentencing order. Mr. Doyle did not file anything in the state court during this one-year period. Thus, his AEDPA statute of limitations period expired uninterrupted on June 30, 2020. Mr. Doyle filed only two potential collateral actions in the state courts after June 30, 2020: (1) a June 3, 2021, delayed appeal before the Ohio Supreme Court (ECF No. 5, Exhibit 18) and (2) an April 23, 2021, motion to file a delayed App. R. 26(B) application (ECF No. 5, Exhibit 22).

But these filings cannot serve to toll the AEDPA statute of limitations because it is well-settled that statutory tolling under § 2244(d)(2) "does not … 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano¸* 346 F.3d 598, 602 (6th Cir. 2003) (quotation omitted); *see also Keeling*, 673 F.3d at 462 ("Because the one year statute of limitations period had already expired when Keeling filed the motion, statutory tolling does not apply."). Mr. Doyle did not file his motion for delayed appeal before the Ohio Supreme Court or his motion to file a delayed App. R. 26(B) application until 2021—well after the AEDPA limitations period had expired in 2020.

Moreover, a motion for a delayed appeal is "not part of the direct appeal" for the purposes of § 2244(d)(1). *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001). Thus, a motion for delayed appeal can only toll the limitations period during its pendency, rather than extend the date on which the limitations period first begins to run. *Searcy*, 246 F.3d at 519; *Board v. Bradshaw*, 805 F.3d

14

769, 776 (6th Cir. 2015). Therefore, neither of the collateral pleadings filed after Mr. Doyle's already-expired AEDPA limitations periods affected his AEDPA statute of limitations.

### 2. *Equitable Tolling*

Although statutory tolling is not applicable, that determination does not end the analysis. Because AEDPA's one-year statute of limitations is not jurisdictional, a court may still entertain an untimely petition if the petitioner is entitled to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). If a petitioner seeks equitable tolling, he must show that: (1) he pursued his rights diligently; and (2) some extraordinary circumstance stood in his way and prevented timely filing. *See Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) (citing *Holland*, 560 U.S. at 649); *Keeling*, 673 F.3d at 462. Significantly, "[e]quitable tolling is granted sparingly and is evaluated on a case-by-case basis, with the petitioner retaining the 'ultimate burden of persuading the court that he or she is entitled to equitable tolling.'" *Keeling*, 673 F.3d at 462 (quoting *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011)). Mr. Doyle largely attributes his untimely petition to obstacles from the COVID-19 pandemic. (*See* ECF No. 9, PageID#783.) Based on the facts presented, however, this does not serve as an extraordinary circumstance that warrants equitable tolling.

"Courts have concluded that the COVID-19 pandemic 'could—in certain circumstances—conceivably warrant equitable tolling . . . .'" *United States v. West*, 578 F. Supp. 3d 962, 966 (N.D. Ohio 2022) (quoting *United States v. Horo*, No. 8:18-cr-66, 2020 WL 5653520, at *4 (D. Neb. Sept. 23, 2020)). However, courts have not been receptive to "bare COVID-based equitable tolling arguments." *Little v. Sheldon*, No. 3:20-cv-02527-BYP, 2023 WL 2666116, at *6 (N.D. Ohio Mar. 6, 2023), *report and recommendation adopted*, 2023 WL 2664291 (citing cases). Rather, a petitioner claiming equitable tolling based on the COVID-19 pandemic must show that the

15

petitioner had been "pursuing their rights diligently and would have timely filed if not for external obstacles caused by COVID-19." *United States v. West*, 578 F. Supp. 3d 962, 966 (N.D. Ohio 2022); *see also Pryor v. Erdos*, No. 5:20cv2863, 2021 WL 4245038, at *9 (N.D. Ohio Sept. 17, 2021) ("[A] petitioner seeking tolling on such a basis must still demonstrate fact-specific circumstances related to the pandemic that hindered his ability to timely file a habeas petition.") (collecting cases).

Here, although Mr. Doyle invokes the COVID-19 pandemic, he does not explain *how* the pandemic caused him to miss his filing deadlines. Nor does he present any information to suggest that he exercised reasonable diligence to overcome the unspecified COVID-19 barrier. First, as Respondent correctly notes, the COVID-19 pandemic did not begin in Ohio until March 2020. In the instant case, the Eighth District Court of Appeals issued its decision on March 21, 2019. (ECF No. 5-1, Exhibit 17.) The trial court issued its limited resentencing entry on May 30, 2019. (ECF No. 5-1, Exhibit 21.) Yet, Mr. Doyle failed to timely appeal the Eighth District Court of Appeals' March 2019 decision until over two years later. (ECF No. 5-1, Exhibit 18.) And he never pursued an appeal from the trial court's May 2019 limited resentencing entry. (ECF No. 5-1, Exhibit 21.) The filing deadlines to appeal expired in 2019, well before the impact of COVID-19 in Ohio's prison or courts. Mr. Doyle's "failure to demonstrate that he diligently pursued his claims (or even took *any* action) before the COVID-19 health crisis took hold is fatal to his timeliness argument." *West*, 578 F.Supp.3d at 967 (emphasis in original).

Likewise, Mr. Doyle presents no clear explanation for anything outside of his control that prevented him from filing a timely habeas petition during the 10-month period of May 6, 2019,

until the May 6, 2020[3] expiration of his AEDPA statute of limitations. He does not allege that the federal courts were closed to *pro se* inmate filings during the COVID-19 pandemic. And Mr. Doyle fails to demonstrate *how* he was prevented from diligently pursuing a habeas petition for well over two years after his conviction became final.

Although not argued in his Petition, Mr. Doyle argues in his Traverse that inadequate contact with his appellate counsel (compounded by the COVID-19 pandemic) contributed to his untimely filing. (*See* ECF No. 9, PageID#783.) I construe Mr. Doyle to argue that he is entitled to equitable tolling because his attorney failed to inform him that a decision had been rendered affirming his conviction. But the Sixth Circuit has declined to allow equitable tolling for ineffective assistance of counsel even in circumstances when a petitioner's attorney failed to inform him of his appellate decision for more than a year after it was issued. *Robinson v. Easterling*, 424 F. App'x 439, 443 (6th Cir. 2011) ("[T]his Court has never granted equitable tolling to a petitioner who sat on his rights for a year and a half, and we decline to do so here.") (quoted by *Keeling v. Warden*, 673 F.3d 452, 463 (6th Cir. 2013)); *Winkfield v. Bagley*, 66 F. App'x 578, 583-84 (6th Cir. 2003) (declining to apply equitable tolling even though petitioner's attorney failed to inform him of an appellate decision for more than a year after it issued); *Eliot v. Dewitt*, 10 F. App'x 311, 312-13 (6th Cir. 2001) (no equitable tolling when petitioner's attorney and the state court allegedly failed to inform him that a decision had been rendered affirming his conviction).

Furthermore, Mr. Doyle fails to demonstrate reasonable diligence, even with this alleged excuse, in pursuing his rights. The record does not reflect that he took any action to monitor his

---

[3] If the triggering event was the trial court's *nunc pro tunc* judgment entry, then this period would be from June 30, 2019 until June 30, 2020. Nonetheless, the filing of Mr. Doyle's federal habeas petition falls outside this AEDPA limitations period.

17

appeal from February 14, 2019, until at some unspecified date two months after the Eighth District Court of Appeals' March 21, 2019, decision. (*See* ECF No. 5-1, PageID#204.) Thereafter, Mr. Doyle alleges he and his family members tried contacting his appellate counsel to no avail. (*Id.* at PageID#204-05.) He then alleges that he wrote the Eighth District Court of Appeals, which instructed that he had to contact his appellate counsel. (*Id.* at PageID#205.) Upon calling outside counsel at an unspecified date, he alleges he was advised to file a motion to obtain the trial court's *nunc pro tunc* resentencing judgment entry. (*Id.* (citing ECF No. 5-1, Exhibit 22.)) He then filed that motion in April 2021 to obtain the judgment entry, which the court also granted in April 2021. (ECF No. 5-1, Exhibit 22.) After obtaining the judgment entry, he then filed his motion for delayed appeal to the Ohio Supreme Court in June 2021. (ECF No. 5-1, Exhibit 19.)

Equitable tolling does not apply here because Mr. Doyle's untimely filings are the result of his failure to monitor the status of his own appeal. *Keeling*, 673 F.3d at 464 (finding equitable tolling not warranted despite appellate counsel's failure to inform him about the result of his appeal where petitioner "did not diligently monitor the statute of his appeal"). Thus, his appellate counsel's failure to maintain contact with Mr. Doyle does not serve as a sufficient extraordinary circumstance.

Further, despite his appellate counsel's alleged failure to maintain contact or inform him of the appellate court's decision, Mr. Doyle does not explain *how* or *why* it took over two years for him to attempt to obtain the trial court's judgment entry and file a notice of appeal to the Ohio Supreme Court, or *why* he waited 14-15 months to file his own federal habeas petition. Mr. Doyle's vague and generalized contentions that the COVID-19 pandemic actually interfered with his ability to file a timely habeas petition (or other timely filings) when he became aware of the Ohio Court

18

of Appeals' decision and the trial court's *nunc pro tunc* resentencing judgment entry do not demonstrate an extraordinary circumstance.

To the extent that Mr. Doyle attributes his "confusion" (ECF No. 9, PageID#783) to his *pro se* status, lack of legal knowledge, or lack of access to legal materials, these factors also do not constitute extraordinary circumstances warranting equitable tolling. The Sixth Circuit has repeatedly held that "ignorance of the law alone is not sufficient to warrant equitable tolling." *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *see Taylor v. Palmer*, 623 F. App'x 783, 789 (6th Cir. 2015). Moreover, courts within the Sixth Circuit have found a petitioner's *pro se* status and lack of legal training are similarly insufficient to warrant equitable tolling. *See, e.g.*, *Keeling*, 673 F.3d at 464 ("Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute and extraordinary circumstance and to excuse his late filing."); *Burden v. Bunting*, No. 5:15 CV 00967, 2016 WL 541783, at *6 (N.D. Ohio July 15, 2016) ("Courts have uniformly held that neither a prisoner's *pro se* status nor his lack of knowledge of the law constitute extraordinary circumstances justifying equitable tolling."). Accordingly, Mr. Doyle does not allege factually specific circumstances stemming from the COVID-19 pandemic that warrant equitable tolling.

### 3.  *Actual Innocence*

Finally, Mr. Doyle does not establish that he is entitled to equitable tolling based on actual innocence. The one-year statute of limitations may be subject to equitable tolling upon a "credible showing of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). A petitioner must overcome a high hurdle to establish actual innocence. To succeed, the petitioner must "show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 399 (internal quotation marks and citations omitted). "Thus, the threshold inquiry is whether new facts raise sufficient doubt about the petitioner's guilt to undermine confidence in

the result of the trial." *Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005) (cleaned up). Although a petitioner who asserts a claim of actual innocence does not need to establish diligence, unexplained delay "bears on the determination whether the petitioner has made the requisite showing." *McQuiggin*, 569 U.S. at 399 (internal quotation marks and citations omitted).

Here, Mr. Doyle fails to provide credible evidence of actual innocence. While he makes no argument regarding actual innocence in his Petition, he appears to argue in his Traverse that he is actually innocent because the evidence allegedly was not sufficient to convict him, *i.e.*, he alleges that his DNA was not on the gun, his DNA was not in the victim's car, and he was not seen in or by the victim's car. (*See* ECF No. 9, PageID#783.) To the extent that this constitutes an actual innocence argument, this argument should be rejected. Mr. Doyle offers no *"new"* evidence not available at trial that makes it "more likely than not that no reasonable juror would have found his guilty beyond a reasonable doubt." *McCray v. Vasbinder*, 499 F.3d 568, 572 (6th Cir. 2007) (quoting *Schlup v. Delo*, 514 U.S. 298, 327 (1995)) (emphasis added).

Here, Mr. Doyle is not presenting a true claim of actual innocence. Rather, he is "actually seeking to retry his case in federal habeas court on the identical physical evidence (or lack thereof) adduced during trial. A habeas court does not sit as a second trial court or a tertiary level of appeal." *Noling v. Bradshaw*, No. 5:04-CV-1232, 2008 WL 320531, at *19 n.7 (N.D. Ohio Jan. 31, 2008) (citing *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). Thus, Mr. Doyle fails to make a showing of actual innocence.

In sum, I recommend that the Court dismiss this petition as time-barred by AEDPA's one-year statute of limitations because his petition is untimely, and he does not demonstrate that statutory tolling renders his petition timely or equitable tolling is warranted due to extraordinary circumstances. Alternatively, I recommend that the Court deny and/or dismiss this petition because

his grounds for relief are procedurally defaulted, non-cognizable, and/or meritless for the reasons set forth below.

### B. **Procedural Default**

Mr. Doyle's Ground One, Ground Three, and Ground Four claims for relief are procedurally defaulted because he failed to timely appeal the Eighth District Court of Appeals' decision to the Ohio Supreme Court. In this case, the Eighth District Court of Appeals issued its decision on March 21, 2019. (ECF No. 5-1, Exhibit 17, PageID#162.) Under Ohio Supreme Court's Rules of Practice, Mr. Doyle had 45 days from that date to appeal the appellate court's decision. Ohio S.Ct.Prac.R. 7.01(A)(1)(a)(i). But Mr. Doyle did not file a notice of appeal or motion to file a delayed appeal in the Ohio Supreme Court until more than two years later. On June 3, 2021, Mr. Doyle filed a Notice of Appeal to the Supreme Court of Ohio along with a Motion to File a Delayed Appeal, which is permitted by the Ohio Supreme Rules of Practice in a felony case upon a determination of "reasons for the delay." *See* S.Ct.Prac.R. 7.01(A)(4)(a); (ECF No. 5-1, Exhibits 18-19.) The Ohio Supreme Court declined Mr. Doyle leave to proceed with his delayed appeal. (ECF No. 5-1, Exhibit 20.) The Ohio Supreme Court's unexplained entry denying Mr. Doyle's motion for delayed direct appeal constitutes an adequate and independent state ground sufficient to bar federal habeas corpus review. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004); *see Stone v. Moore*, 644 F.3d 342, 348 (6th Cir. 2011). Accordingly, Mr. Doyle's first ground for relief is procedurally defaulted unless Mr. Doyle can demonstrate cause and prejudice, or that a miscarriage of justice exists.

Mr. Doyle claimed to the Ohio Supreme Court that the COVID-19 pandemic caused him to miss his filing deadline by two years and three months. (ECF No. 5-1. Exhibit 19, PageID#206.) Yet, like Mr. Doyle's equitable tolling argument, Mr. Doyle's bald assertion that the COVID-19

pandemic precluded him from timely appealing the state appellate court's decision and resulted in him filing an appeal two years too late is insufficient in the absence of specific factual support. *Holt v. Mays*, No. 1:21-cv-01168-JDB-jay, 2023 WL 2316395, at *4 (W.D. Tenn. Feb. 13, 2023) (finding that petitioner's "bald assertion" of obstacles related to the COVID-19 pandemic without "specific factual support" did not demonstrate cause and prejudice to excuse procedural default). Indeed, Mr. Doyle's filing deadline to the Ohio Supreme Court would have been on May 5, 2019— approximately *10 months before* the COVID-19 pandemic. As discussed above, it is unclear—nor does Mr. Doyle adequately explain—how his filing was impacted where his notice of appeal was due well before COVID-19 arose. *See Bingham v. Haviland*, No. 3:20-cv-01846-BYP, 2023 WL 6385656, at *9 (N.D. Ohio Aug. 1, 2023) (finding COVID-19 pandemic insufficient cause to excuse petitioner's procedural default because filing deadline for notice of appeal was "well before COVID-19 arose and several months before the Supreme Court of Ohio's pandemic-related tolling provisions took effect"), *report and recommendation adopted*, 2023 WL 6383684 (N.D. Ohio Sept. 29, 2023). Thus, Mr. Doyle has failed to show cause and prejudice to excuse his procedural default.

Finally, Mr. Doyle does not demonstrate that his conviction is the result of a fundamental miscarriage of justice, *i.e.*, actual innocence. A fundamental miscarriage of justice is the conviction of one who is "actually innocent." *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 496. A petitioner must show that it is more likely than not no reasonable juror would have found him guilty beyond a reasonable doubt in the light of "***new evidence***." *Schlup*, 513 U.S. at 327 (emphasis added). While Mr. Doyle asserts a "manifest miscarriage of justice" (ECF No. 9, PageID#783), he fails to present any new, reliable evidence of his innocence. (*See generally* ECF Nos. 1, 9.) "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation

is not in itself sufficient to establish a miscarriage of justice that would allow a [federal] habeas court to reach the merits of a barred claim." *Id.* at 316. Thus, Mr. Doyle fails to demonstrate that procedural default for Grounds One, Three, and Four should be excused on the basis of actual innocence. Accordingly, these claims are barred from federal habeas merits review.

### C. **Merits**

#### 1. *Ground One: Sufficiency of the Evidence*

Mr. Doyle argues that there was insufficient evidence to sustain his convictions. In support, he contends that he "did not commit" his crimes and there were "inconsistenc[i]e[s] with [the] evidence." (ECF No. 1, PageID#5.) Respondent asserts that this argument lacks merit. (ECF No. 5, PageID#46-50.) Respondent's argument is well-taken.

Challenges to a state court conviction based on the sufficiency of the evidence are properly cognizable in a federal habeas corpus petition. *Jackson v. Virginia*, 443 U.S. 307, 321 (1983). In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. The reviewing court may not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the [fact-finder]." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

On habeas review, this question involves "a double layer of deference[.]" *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). First, the court "must view the evidence in the light most favorable to the prosecution, and determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Mathis v. Colson*, 528 F. App'x 470, 476 (6th Cir. 2013) (quoting *Jackson*, 443 U.S. at 319). "Second, 'even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on

habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable.'" *Id.* (quoting *Brown*, 567 U.S. at 205)). Under the *Jackson* standard, a habeas petitioner "who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle." *Davis v. Lafler*, 658 F.3d 525, 634 (6th Cir. 2011) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Because Mr. Doyle conceded that his challenge to the sufficiency of the evidence was instead a challenge to the weight and credibility of the evidence,[4] the Eighth District Court of Appeals rejected Mr. Doyle's sufficiency of the evidence/manifest weight of the evidence claim as follows:

> {¶10} In the second and third assignments of error, Doyle claims his conviction is against the weight of the evidence. Although Doyle couched his second assignment of error in terms of sufficiency of the evidence, he concedes that the argument is based on inconsistencies within that evidence. Those inconsistencies must be resolved in favor of the state. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus ("[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt"); *see also State v. Gordon*, 8th Dist. Cuyahoga No. 93059, 2010-Ohio-777, 2010 WL 728117, ¶ 8 (standard for sufficiency of the evidence precludes appellate courts from considering inconsistencies in evidence because the evidence must be considered in a light most favorable to the state). In light of the concession, both assignments of error will be addressed under the weight-of-the-evidence review.
>
> {¶11} When reviewing a claim challenging the weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts or inconsistencies in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Generally, determinations of credibility and weight of the testimony are

---

[4] To the extent that Mr. Doyle is raising a manifest weight of the evidence argument, such an argument is not cognizable for federal habeas review. An argument that a conviction was against the manifest weight of evidence is a *state law* argument. *See Gibson v. Miller*, No. 5:15-cv-119, 2016 WL 6277229, at *1 (N.D. Ohio Oct. 27, 2016) ("[C]ontentions that a conviction is contrary to the manifest weight of the evidence also do not raise cognizable claims."); *Schwartzman v. Gray*, No. 17-3859, 2018 U.S. App. LEXIS 27193, at *8 (6th Cir. 2007) ("A manifest-weight-of-the-evidence claim in Ohio is a state-law claim that is similar to but ultimately different from a federal constitutional claim that the evidence was insufficient to support a conviction.").

reserved for the trier of fact. *State v. Lipkins*, 10th Dist. Franklin, 2017-Ohio-4085, 92 N.E.3d 82, ¶ 36, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶12} The trier of fact "may take note of the inconsistencies and resolve them accordingly, 'believing all, part, or none of a witness's testimony.' " Id., quoting *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, 2003 WL 723225, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

> An appellate court considering a manifest weight challenge "may not merely substitute its views for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

*Id.* at ¶ 37, quoting *State v. Harris*, 10th Dist. Franklin No. 13AP-770, 2014-Ohio-2501, 2014 WL 2583023, ¶ 22, citing *Thompkins* at 387, 678 N.E.2d 541. A conviction will only be reversed as being against the manifest weight of the evidence in the most "'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Thompkins* at 387, 678 N.E.2d 541, and *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶13} Doyle claims that his conviction for aggravated robbery is against the weight of the evidence. According to Doyle, the fact that the forensic evidence excluded him as a contributor to the samples taken from the stolen vehicle and the recovered firearm, and the fact that one of the police officers failed to include a notation in his unofficial report that Doyle was first seen exiting the codefendant's vehicle demonstrate the manifest injustice. As previously noted, the trial court considered all the evidence, including the arguments defense counsel raised regarding those inconsistencies in the evidence.

{¶14} In light of the totality of the record, this is not the exceptional case in which the evidence weighs heavily against the conviction. As the trial court noted, Doyle was found near the stolen vehicle and was seen (and forensically was proven to be) in the vehicle used in the commission of the robbery 30 minutes after the aggravated robbery was reported. He and the codefendant matched the generic descriptions of the offenders provided by the victim, including their respective hairstyles, and both took flight when approached by officers. Doyle then attempted to conceal himself within a wall of the residential building into which he fled, permitting a reasonable inference of the consciousness of guilt. The firearm used during the robbery was found in the glove compartment of the vehicle from which Doyle exited when officers arrived. Further, the trial court considered the forensic evidence excluding Doyle as a contributor to samples collected from the firearm and the stolen vehicle, and expressed its belief that the in-court identification procedures were not enough

by themselves to support a conviction. The trial court, nonetheless, based its finding
of guilt to aggravated robbery on the totality of the evidence. The aggravated
robbery conviction is not against the weight of the evidence.

*Doyle*, 2019-Ohio-979, ¶¶ 10-14, 133 N.E.3d 890, 894–95.

Applying the first layer of the "double layer of deference," *White*, 602 F.3d at 710, to Mr.
Doyle's case and viewing the evidence discussed above in the Eighth District Court of Appeals'
ruling in the light most favorable to the prosecution, any rational trier of fact could have found that
the trial court evidence was sufficient to prove the essential elements of the crimes beyond a
reasonable doubt. Mr. Doyle conclusorily asserts that that there is insufficient evidence to support
his conviction, but he does not challenge the accuracy of the Ohio Court of Appeals' summary of
the evidence, nor does he offer any evidence or argument disputing the specific facts summarized
in the court's decision. (ECF No. 1, PageID#5.)

Even if I concluded that the evidence was not sufficient (which I do not), AEDPA requires
this Court to ask whether the state court was objectively unreasonable in its conclusion that a
rational trier of fact could find Mr. Doyle guilty beyond a reasonable doubt. *White*, 602 F.3d at
710. Applying the second layer of the "double layer of deference," Mr. Doyle fails to establish that
the Eighth District Court of Appeals' court's sufficiency determination was unreasonable. In his
Traverse, Mr. Doyle, makes the same argument from his direct appeal and contends that his DNA
was not on the gun or in the victim's car, and that he was not seen in or by the victim's car. Mr.
Doyle fails to offer *any* evidentiary support that sufficiently supports his claims or rebuts the state
appellate court's factual findings.

Indeed, the record suggest the exact opposite. In fact, as the state appellate court found,
Mr. Doyle left forensic evidence in the front, passenger area of the codefendant's vehicle used in
the commission of the aggravated robbery. *Doyle*, 2019-Ohio-979, ¶5; (*see* Tr. 333:1-10.) And the

26

record supports the Eighth District's factual finding that Mr. Doyle was seen in or by the victim's car because a police report reflects that Mr. Doyle was seen exiting the codefendant's vehicle upon the officers' arrival at the scene. *Doyle*, 2019-Ohio-979, ¶4. Mr. Doyle fails to demonstrate with clear and convincing evidence that the state court's judgment was contrary to, or an unreasonable application, of clearly established federal law as determined by the Supreme Court of the United States. Accordingly, I recommend that the Court deny his Ground One claim because it lacks merit.

### 2. *Ground Two: Right to Use Ohio Appeals Process*

Mr. Doyle alleges that the Ohio Supreme Court deprived him of his constitutional rights of due process when the state appellate court denied his untimely discretionary appeal due to the COVID-19 pandemic. (*See* ECF No. 1, PageID#7.) Although Mr. Doyle couches his ground for relief in federal terms, this claim is non-cognizable because it deals with a matter of state law rather than federal law.

Federal habeas corpus is only available on behalf of a person that "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Federal courts may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988); *see Estelle*, 502 U.S. at 67-68 ("It is not the province of a federal court to reexamine state-court determinations on state-law questions."). A violation of a state law is not cognizable in federal habeas corpus unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution. *See Floyd v. Alexander*, 148 F.3d 615, 619 (6th Cir. 1998).

Here, Mr. Doyle challenges the Ohio Supreme Court's decision denying him leave to file a delayed direct appeal due to the COVID-19 pandemic. But the Ohio Supreme Court's decision on whether to accept discretionary review was made pursuant to S.Ct.Prac.R. 7.08(B)(4), and a challenge to state law is not cognizable. *Pulley*, 465 U.S. at 41. Moreover, a court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005). Therefore, whether the Ohio Supreme Court properly denied Mr. Doyle's motion for a delayed appeal under state law is not a cognizable issue for federal habeas review. *See Jones v. Moore*, No. 3:04CV7584, 2006 WL 903199, at *6 (N.D. Ohio Apr.7, 2006) (dismissing ground for relief challenging Ohio Supreme Court's denial of motion for leave to appeal as being not cognizable and noting that there is no constitutional right to appeal to the Ohio Supreme Court); *Norris v. Davis*, No. 05-60126, 2006 WL 1581410, at *18 (E.D. Mich. May 3, 2006) (finding that a substantive claim regarding the state supreme court's denial of a delayed appeal failed to state a federal constitutional claim cognizable on habeas review); *Smith v. State of Ohio Dep't. of Rehab. and Corr.*, 331 F.Supp.2d 605, 622 (N.D. Ohio 2004) (finding that a ground for relief challenging Ohio Supreme Court's denial of a motion for leave to file a delayed appeal is not cognizable in federal habeas review). Finally, Mr. Doyle does not cite any Supreme Court precedent which holds that a defendant is deprived of due process when he is denied a delayed appeal. (ECF No. 1, PageID#7.)

Because Mr. Doyle does not establish—much less explain how—the Ohio Supreme Court's denial of his motion for delayed appeal filed over a year late constitutes a federal due process violation rather than a purely state law issue, I recommend that the Court dismiss this ground for relief because it is non-cognizable.

### 3.  *Ground Three: Speedy Trial Violation*

Mr. Doyle asserts that his federal constitutional and statutory state rights to a speedy trial were violated in this case. (ECF No. 1, PageID#8.) Respondent contends that this claim is non-cognizable and meritless. (ECF No. 5, PageID#52-54.) Respondent's arguments are well-taken for the reasons set forth below.

### a.  Cognizability

To the extent Mr. Doyle argues that his statutory right to a speedy trial under Ohio law was violated, that claim is not cognizable on federal habeas review because it a question of state law. *See Phillips v. Schweitzer*, No. 3:18-cv-02556, 2020 WL 9889893, at *9 (N.D. Ohio Nov. 10, 2020), *report and recommendation adopted*, 2021 WL 2101820 (N.D. Ohio May 24, 2021) ("nor does an alleged violation of Ohio's speedy trial statute present a cognizable federal habeas claim"); *Smith v. Warden, Pickaway Corr. Inst.*, No. 1:18-cv-335, 2019 WL 2774258, at *4 (S.D. Ohio July 2, 2019), *report and recommendation adopted,* 2020 WL 1042449 (S.D. Ohio Mar. 4, 2020) ("[B]ecause the federal habeas court only has jurisdiction to consider whether petitioner's confinement violates the Constitution, laws or treaties of the United States, petitioner is unable to prevail on any claim of error under Ohio's speedy-trial statute or state case law interpreting the Ohio statute.").

### b.  Merits

While Mr. Doyle's argument that his speedy trial rights under the United States Constitution were violated is cognizable, this claim is meritless. The Sixth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, guarantees a defendant a "speedy and public trial." U.S. Const. Amend. VI; *Barker v. Wingo*, 407 U.S. 514, 530 (1972). To determine whether a violation of federal speedy trial rights has occurred,

the Supreme Court established a four-factor balancing test. *Barker*, 407 U.S. at 530. The four

factors are the following: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's

assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530;

*see also Doggett v. United States*, 505 U.S. 647, 651 (1992). "[N]one of the four factors [is] either

a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial."

*Barker*, 407 U.S. at 533. Instead, "they are related factors and must be considered together with

such other circumstances as may be relevant." *Id.* Moreover, "even if all four *Barker* factors are

satisfied, a court is not required to conclude that a defendant's speedy trial right has been violated."

*Rice v. Warden, Warren Corr. Inst.*, 786 F. App'x 32, 34 (6th Cir. 2019).

The Eighth District Court of Appeals did not specifically address the Sixth Amendment

claim in its analysis of Mr. Doyle's speedy trial claim. However, in *Brown v. Bobby*, 656 F.3d 325

(6th Cir. 2011), the Sixth Circuit held that a presumption existed in favor of finding that an Ohio

appellate court had adjudicated a federal habeas corpus petitioner's Sixth Amendment speedy trial

claim on the merits, even though the court failed to specifically explain that it was ruling on the

merits of that claim and based its decision on the Ohio Speedy Trial statute. *See id.* The Sixth

Circuit found that the AEDPA deference applied to the Ohio appellate court's decision and

explained that "AEDPA does not require that a state court strictly apply a federal test, as long as

the court does not apply any test or standard that is contrary to federal law." *Id.* at 330. The Sixth

Circuit found that "Ohio's procedure for determining whether a speedy trial violation has occurred,

by applying the 270–day limit, is not 'substantially different' from the *Barker [v. Wingo,* 407 U.S.

514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)] analysis, and can be seen as merely the state's

method of applying that Supreme Court precedent in a more structured manner." *Id.*

The court in *Brown* noted that, while *Barker* did not set a number of days as establishing when a speedy trial violation has occurred, *Barker* did recognize that the States could in fact do so, and Ohio reflected that in its 270-day limit. The *Brown* Court also explained that Ohio courts considered its speedy trial statute to be "coextensive" with the Sixth Amendment's requirement. *Id. Brown* quoted from Ohio's speedy trial statutes and found the various provisions of the statutes, including the time-limit provision and tolling provisions, taking into account many of the considerations underlying the *Barker* factors. *Id.* at 330–333. After determining that the state court adjudicated the merits of the Sixth Amendment claim, the Sixth Circuit then reviewed the state court's analysis in *Brown* to determine whether the court had unreasonably applied the *Barker* standard in that case. *Id.* at 331–338. The Court found that the state court was reasonable in determining that no speedy trial violation had occurred. *Id.* at 337.

Thus, while the Eighth District Court of Appeals did not directly address a Sixth Amendment speedy trial violation, the court did address speedy trial assignment of error and found that no violation occurred. The court explained as follows:

{¶15} And finally, in the fifth assignment of error, Doyle claims his statutory right to a speedy trial was violated. According to Doyle, his trial occurred within 287 calendar days of his arrest, and the trial was therefore untimely under R.C. 2945.71(C).

{¶16} According to the record in this case, Doyle was being held in Cuyahoga C.P. No. CR-15-597558-A for a probation or community-control violation during the pretrial proceedings in the underlying case. Thus, Doyle was not held in jail "solely" on the pending charge for the purposes of the triple-count provision of R.C. 2945.71(E) and the state had 270 days within which to commence trial. *State v. Martin*, 56 Ohio St.2d 207, 383 N.E.2d 585 (1978), citing *State v. MacDonald*, 48 Ohio St.2d 66, 357 N.E.2d 40 (1976); *State v. Butler*, 8th Dist. Cuyahoga No. 85366, 2005-Ohio-4122, 2005 WL 1907279, ¶ 29; *State v. Stephens*, 9th Dist. Summit No. 26516, 2013-Ohio-2223, 2013 WL 2404032, ¶ 13. Doyle concedes the triple-count provision of R.C. 2945.71(E) was inapplicable.

{¶17} There is no speedy-trial violation. On June 7, 2017, the state filed a request for discovery under Crim.R. 16 that went unanswered, which tolled the speedy-trial

time for a reasonable period. *State v. Palmer*, 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011, ¶ 23. Even if only 30 days are attributed to Doyle's failure to respond to discovery and no other tolling event is considered, that alone tolled the speedy-trial time for a sufficient period to satisfy statutory concerns. *See, e.g.*, *State v. Burks*, 8th Dist. Cuyahoga No. 106639, 2018-Ohio-4777, 2018 WL 6271685, ¶ 38; *State v. Miller*, 11th Dist. Trumbull No. 2010-T-0018, 2010-Ohio-5795, 2010 WL 4868111, ¶ 58.

*Doyle*, 2019-Ohio-979, ¶¶15-17.

Applying AEDPA deference, the Eighth District Court of Appeals' decision was not contrary to federal law because the state appellate court's analysis under Ohio's speedy trial statute was consistent with the Sixth Amendment. *See Brown*, 656 F.3d at 330. Further, the Eighth District's decision was not an unreasonable application of federal law. First, as the Eighth District determined, there was *no* state statutory violation of Doyle's right to a speedy trial. That is because Mr. Doyle: (1) was held in jail for a probation or community-control violation during the pre-trial proceedings of the case; and (2) Mr. Doyle's failure to respond to a discovery request tolled the speedy trial provision for a reasonable period of time to satisfy statutory concerns. Nor does Mr. Doyle demonstrate by clear and convincing evidence that the state appellate court's factual determination was incorrect, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Even if Mr. Doyle's alleged figure of 287 days (approximately nine months) is accurate, such a delay is not presumptively prejudicial. The first *Barker* factor, the length of the delay, "can generally be considered a triggering mechanism." *Norris v. Schotten*, 146 F.3d 314, 326 (6th Cir. 1998). A court's "first inquiry" is therefore "whether there was a presumptively prejudicial delay to warrant further investigation of the Barker factors." *Id.* at 326-27; *see Maples v. Stegall*, 427 F.3d 1020, 1025-26 (6th Cir. 2005) ("The length of the delay is a threshold requirement. If the length of the delay is not 'uncommonly long,' then judicial examination ends."). "The Supreme

Court [has] noted that, in general, a delay that approaches one year is considered presumptively prejudicial, depending on the nature and seriousness of the charges." *Id.* at 327 (citing *Doggett*, 505 U.S. at 652 n.1).

Courts within the Sixth Circuit have held that a nine-month delay is not presumptively prejudicial. *See Jaeger v. Wainwright*, No. 1:19-CV-02853-JPC,  2023 WL 6554265, at *27 (N.D. Ohio Sept. 1, 2023) (delay of nine months is "well under a year" and not presumptively prejudicial), *report and recommendation adopted*, 2023 WL 6282944 (N.D. Ohio Sept. 27, 2023); *United States v. McPherson*, No. 2:08CR38, 2009 WL 2146360, at *3 (E.D. Tenn. July 14, 2009) (delay of nine months does not "approach" one year so as to trigger presumption of prejudice); *see United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007) (finding that a nine-month delay is not uncommonly long and is insufficient to warrant further consideration of the remaining *Barker* factors)*.*  And the Sixth Circuit has held that a 10.5-month delay is not presumptively prejudicial). *Wilcher v. Rose*, 85 F.3d 630 (6th Cir.1996) (unpublished), 1996 WL 262951, at *1.

Nonetheless, even if the length of the delay here could be considered prejudicial, the balance of the *Barker* factors does not weigh in favor of Mr. Doyle. The second *Barker* factor is the reason for the delay. In assessing this factor, "the court considers who is most at fault—the government or the defendant." *Brown v. Romanowski*, 845 F.3d 703, 714 (6th Cir. 2017). "Governmental delays motivated by bad faith, harassment or attempts to seek a tactical advantage weigh heavily against the government." *United States v. Schreane*, 331 F.3d 548, 554 (6th Cir. 2003). Negligence and unexplained delay also weigh against the government, albeit less heavily, "'but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.'" *Id.* at 554. (quoting *Barker*, 407 U.S. at 531.)

Here, Mr. Doyle does not present any facts demonstrating bad faith, harassment, or attempts to seek a tactical advantage by the government. The continuance motions from the State—one of which was at the request of *all* parties (ECF No. 5-1, Exhibit 5)—were tied to delays in receiving DNA results and the unavailability of the victim for trial. (ECF No. 5-1, Exhibits 4-6); *Barker*, 407 U.S. at 531 ("[A] valid reason, such as a missing witness, should serve to justify appropriate delay.").  And the two continuances on the part of the trial court were due to the court being in trial on a different matter. (ECF No. 5-1, Exhibits 7-8.) Mr. Doyle's failure to respond to the State's discovery request also contributed to his trial's delay. *Doyle*, 2019-Ohio-979, ¶17. Although Mr. Doyle contributed to this delay, most of this delay—although weighed very lightly given the reasons set forth above—is attributable to the State. Thus, this factor tilts marginally in favor of Mr. Doyle.

The third *Barker* factor "relates to 'the defendant's responsibility to assert his right,' and its effect will depend on the other factors." *Miles*, 988 F.3d at 925 (quoting *Barker*, 407 U.S. at 531). "The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain." *Barker*, 407 U.S. at 925. It is unclear from the limited record here whether Mr. Doyle did assert his right. But even if this factor were to favor Mr. Doyle, his argument still falls short because he is unable to demonstrate prejudice.

The fourth factor is the prejudice to the defendant from the delay. Mr. Doyle had the burden to demonstrate that he suffered substantial prejudice from the delay. *See Brown*, 845 F.3d at 716 ("In this circuit, the defendant is required to show that the delay caused substantial prejudice.") (citing *United States v. Ferreira*, 665 F.3d 701, 706 (6th Cir. 2011) (internal quotation omitted)).

This factor "should be assessed 'in the light' of three interests: (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern, and (3) to minimize damage to the defense." *Barker*, 407 U.S. at 532. Mr. Doyle does not meet this burden because he makes no argument demonstrating that he suffered substantial prejudice from the delays. (ECF No. 8, PageID#8; ECF No. 9, PageID#783); *Jaeger*, 2023 WL 6554265, at \*26 (finding no substantial prejudice where petitioner "ma[de] no argument as to how he was prejudiced by any perceived delay in bringing him to trial"). Further, substantial prejudice is not evident from the record. *See United States v. Bass*, 460 F.3d 830, 837 (6th Cir. 2006) (providing that, when a petitioner "fails to provide any particular evidence of prejudice," the prejudice *Barker* factor will "favor[ ] ... finding that there was no speedy trial violation"). Thus, this factor weighs heavily against finding a speedy trial violation.

In sum, the Eighth District Court of Appeals' decision, despite not explicitly addressing the federal claim on the merits, was neither contrary to nor an unreasonable application of federal law. As such, the reasonable result of the state court decision is entitled to AEDPA deference. Thus, Mr. Doyle's third ground for relief is meritless.

**4.  *Ground Four: Victim's In-Court Identification***

Mr. Doyle argues that the victim's in-court identification violated his constitutional rights. (ECF No. 1, PageID#210.) He offers no supporting facts and instead refers this Court to the Eighth District Court of Appeals' decision addressing his ground for relief. (*Id.*) Reading Mr. Doyle's habeas petition liberally, I construe Mr. Doyle to be arguing that the trial court should have suppressed the victim's in-court identification. I recommend that the Court deny this ground for relief because it is procedurally defaulted and meritless.

The Eighth District Court of Appeals addressed this argument on the merits and found there was no error, stating the following:

> {¶7} In the first assignment of error, Doyle claims that the victim's in-court identification was impermissibly suggestive and that the trial court should have suppressed that identification. There is no error. The trial court agreed with Doyle's sentiment and found that the in-court identification was unduly suggestive. Tr. 460:15-25. Although the identification was not suppressed, the court expressly concluded that the victim's in-court identification of Doyle is not sufficient to prove his identity as the perpetrator of the crime. Tr. 461:5-7.

> {¶8} Instead of relying on the in-court identification, the trial court concluded that Doyle committed the robbery because of (1) the generic description of the offenders, which included their respective hairstyles, that permitted the identification of the suspects as officers arrived to secure the stolen vehicle; (2) the victim's ability to describe the firearm used in the robbery that matched the one found in the glove compartment of the codefendant's vehicle near where Doyle was seen exiting when officers arrived; (3) the testimony of responding officers who witnessed Doyle exit the front passenger seat of the codefendant's vehicle and run into the residential structure; (4) the forensic evidence placing Doyle in the front passenger seat of the codefendant's vehicle near where the recovered firearm was discovered; and (5) the fact that Doyle attempted to conceal himself within the insulation behind the walls in the building into which he fled in an attempt to evade arrest. Even if, for the sake of discussion, the failure to suppress the in-court identification is assumed to be error at a bench trial, the failure to exclude evidence the trial court expressly rejects is the epitome of harmless error. Any perceived error with the failure to suppress that evidence could not have affected the substantial rights of the offender under Crim.R. 52(A).

*Doyle*, 2019-Ohio-979, ¶¶7-8.

Alleged "trial error" such as the evidentiary error asserted in this case is alleged "error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Arizona v. Fulminante*, 499 U.S. 279, 307-09 (1991). Harmless error analysis requires that an error is harmless unless it had "a substantial and injurious effect or influence in determining the [court's] verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623(1993); *Hawkins v. Ganshimer*, 286 F. App'x 896, 902 (6th Cir. 2008) (citing

*Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)). In making that determination, the court considers "the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, ... and, of course, the overall strength of the prosecution's case." *Id.* at 902-03 (quoting *Van Arsdall*, 475 U.S. at 684). Because the state court adjudicated Mr. Doyle's claims on the merits, the state court's harmless error analysis is entitled to AEDPA deference. *Davis v. Ayala*, 576 U.S. 257, 269 (2015).

Applying AEDPA deference, the Eighth District Court of Appeals reasonably determined that the trial court did not err when it did not suppress the victim's in-court identification. The trial court court specifically stated that it did not consider the victim's in-court identification in reaching the conclusion that Mr. Doyle was guilty. (*See* Tr. 460:15-25, 461:5-7.) That is because, as the Eighth District concluded, the evidence against Mr. Doyle was overwhelming. *Doyle*, 2019-Ohio-979, ¶8. Given the significant evidence connecting Mr. Doyle to the crimes, he does not demonstrate that this alleged error had a "substantial and injurious effect or influence in determining the [court's] verdict." *Brecht*, 507 U.S. at 637. Accordingly, I recommend that the Court find that this ground for relief lacks merit.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. **Legal Standard**

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; *see also* 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B. <u>Analysis</u>

Mr. Doyle has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I RECOMMEND that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

Because Mr. Doyle's claims are time-barred, procedurally defaulted, non-cognizable, and/or meritless, I RECOMMEND that the Court DISMISS and/or DENY his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 and not grant him a certificate of appealability. I also RECOMMEND that Cynthia Davis, the Warden of Southern Ohio Correctional Facility—where Mr. Doyle is currently incarcerated—should be substituted for Tim McConahay as the Respondent in this case.

Dated: April 3, 2024

*/s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).